**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

VERNON TUCKER,

                    Plaintiff,

          v.

SILVI CONCRETE, *et al.*,

                    Defendants.

Civil Action No. 22-1026 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

The Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601, permits eligible employees to receive up to twelve weeks of medical leave per year without the risk of losing their jobs. 29 U.S.C. § 2601(b)(1). In this case, Plaintiff Vernon Tucker ("Plaintiff") was hired by Defendants Silvi Concrete, Sil-Kemp Concrete, Inc., and Silvi Concrete Products, Inc. (collectively "Silvi" or "Defendants") in July 2014, but was later terminated on November 15, 2021, for his excessive absenteeism. The Complaint brings claims against Defendants for violations of the FMLA, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.*

This matter is now before the Court upon Defendants' motion for summary judgment on all claims in Plaintiff's Complaint. (ECF No. 45.) In the alternative, Defendants move to compel arbitration under the National Labor Relations Act, 29 U.S.C. § 159(a). Plaintiff opposed (ECF

No. 47) and Defendants replied (ECF No. 48). For the reasons set forth herein, **Defendants'** motion

for summary judgment is granted in part and denied in part.

## I.   <u>BACKGROUND</u>

The Court derives the following recitation from the parties' statements of material fact

submitted pursuant to Local Civil Rule 56.1(a). The Court notes disputes of fact where appropriate.

### A.   **Defendants' Attendance Policies**

From July 2014 up until his termination on November 15, 2021, Defendants employed

Plaintiff as a ready-mix truck driver. (*See* Pl.'s Counter Statement of Material and Disputed Facts

["Pl.'s SMDF"] ¶ 1, ECF No. 47-1.) At the start of his employment, Plaintiff received Defendants'

"employee handbook, driver training manual, uniform agreement and work rules[.]" (Defs.'

Statement of Undisputed Material Facts ["SUMF"] ¶ 5, ECF No. 45-2.) A Collective Bargaining

Agreement ("CBA") entered between Plaintiff's union, Teamsters Local Union No. 469

("Union"), and Defendants also governed the terms of Plaintiff's employment. (CBA, annexed to

Declaration of Justin Britton, Esq. ["Britton Decl."], Ex. H,[1] ECF Nos. 45-15, 45-16, at 355-68.)

The CBA contains an arbitration agreement, stating, in relevant part:

> any and all disputes or controversies arising under or in connection
> with the terms and provisions of this agreement or in respect to
> anything not herein expressly provided for, but germane to the
> general subject matter of this agreement, which disputes or
> controversies cannot be or are not settled or adjusted with the prior
> section hereof [Grievance procedure], shall be submitted for
> decision to an arbitrator selected according to the procedure of the
> American Arbitration Association whose decision shall be final.

(*See* CBA, Art. XVII.)

---

[1] Defendants provide an appendix under Exhibit H of the Britton Declaration, which is Bates
stamped under the title "**Silvi Concrete.**" Exhibit H encompasses ECF Nos. 45-13, 45-14, 45-15,
and 45-16. For ease of reference, the Court refers to Exhibit H as "Defs.' App'x".

Defendants' written employee rules ("Work Rules") and attendance policy ("Attendance Policy") also applied to Plaintiff. (*See* Silvi Work Rules, annexed to Defs.' App'x 370-382.) The Attendance Policy gave Plaintiff five days off for personal time. (SUMF ¶ 15.) "Discipline for the abuse of time [would] be instituted *after* an employee has used up their available personal time[.]" (Defs.' App'x 380 (emphasis in original).) Those disciplinary measures were as follows:

| Absences | Lateness (with call) |
|---|---|
| 1st, 2nd, 3rd day missed - Written warning | 1st, 2nd, 3rd offense - Written warning |
| 4th day missed - 1 day suspension | 4th offense - 1 day suspension |
| 5th day missed - 3 day suspension/Final warning | 5th offense - 3 day suspension/Final warning |
| 6th day missed - Subject to Termination | 6th offense - Subject to Termination |

In addition, employees who worked at least an eight-hour shift on weekdays or a four-hour shift on weekends could request an "early out" up to six times per calendar year. (*Id.*) "[A]dditional 'early outs' . . . [would] be charged as personal time." (*Id.*) Silvi's employees who violated the Attendance Policy six times were subject to termination. (*Id.* ¶ 13; Pl.'s Response to Defs.' SUMF ¶ 13, ECF No. 47-3.)

### B.    Plaintiff's Absenteeism

According to Silvi, Plaintiff was a "frequent abuser" of the Attendance Policy. (SUMF ¶ 16.) Silvi's Regional Operations Manager, Glenn Desmond ("Desmond"), stated that Plaintiff:

> had a routine of calling out and not - - not working. He never really wanted to work more than he needed to. If there was an opportunity for him to go home, he was the first one to take it. If there was an opportunity to stay, he never really wanted to stay and help. And he pushed the attendance policy to the limit almost every year, calling out without time, available time, personal or vacation, and he [would do] that almost routinely every year.

(*See* Dep. Trans. of Glenn Desmond ["Desmond Dep."] 51:12 to -52:8, annexed to Britton Cert., Ex. E.)

From 2014 to 2021, Plaintiff was regularly absent, late, or calling out of work.[2] (*See e.g.*, SUMF ¶¶ 16-84.) Silvi's records corroborate Plaintiff's absences and violations for each calendar year: (1) in 2014, during his first few months of employment, Plaintiff was late to work on three separate occasions and called out without any personal time remaining on December 18, 2014 (Defs.' App'x 1-9); (2) in 2015, Plaintiff violated the Attendance Policy eight times—resulting in five written warnings, a one-day suspension in July, and a three-day suspension in August[3] (*Id.* at 10-21, 31-33); (3) in 2016, Plaintiff had six unexcused absences resulting in a three-day suspension (*Id.* at 22-30, 48); (4) in 2017, Plaintiff violated the Attendance Policy eight times,[4] resulting in a handful of written warnings and a three-day suspension in December 2017 (*Id.* at 34-48); and (5) Plaintiff violated the Attendance Policy eight times in 2018, five times in 2019, and four times in 2020 (*id.* at 49-57, 59-63, 64-67).

In May 2018, Plaintiff asked Silvi's human resources ("HR") department about taking FMLA leave to attend appointments surrounding his son's autism diagnosis. (SUMF ¶ 45; *see also* Pl.'s Response to Defs.' SUMF ¶ 41.) The same day, Silvi's Director of HR and Corporate

---

[2] Plaintiff does not dispute his persistent absenteeism. (*See, e.g.*, Pl.'s Response to Defs.' SUMF ¶¶ 17-39, 51-52, 61, 63, 65, 68, 69, 73-76, 78-82.) To the contrary, Plaintiff states that his absences before 2021—the year he was terminated from Silvi—are "admitted as immaterial." (*Id.*)

[3] In August 2015, Plaintiff was warned that "his [sixth] call out could result in termination depending on the circumstances" and if he was "having trouble with something, [to] please let management know so [management] can try and help [Plaintiff] out." (SUMF ¶ 23; Defs.' App'x 17.) Plaintiff then received a sixth unexcused absence in November 2015, after he called out without any personal time available. (*Id.* ¶ 24; Defs.' App'x 20.) Silvi informed Plaintiff that the sixth call out was "grounds for termination under the Attendance Policy" and "one (1) more violation of the [A]ttendance [P]olicy . . . [would] result in [Plaintiff] being terminated from [his] position with Silvi[.]" (*Id.* ¶ 25; Defs.' App'x 20.)

[4] Plaintiff does not dispute his unexcused absences in 2017; however, he notes that his absences stemmed from his son's diagnosis with Autism Spectrum Disorder on September 12, 2017. (*Id.* ¶ 41; *see also* Pl.'s Response to Defs.' SUMF ¶¶ 36-41.)

4

Counsel, Flank Flatch, Esq. ("Flatch"), advised Plaintiff of Silvi's standard policies regarding intermittent time off. (*Id.* ¶ 46.) Flatch was responsible "for reviewing any FMLA certification paperwork and identifying whether and to what extent the FMLA leave for Silvi employees would be approved." (*See* Dep. Trans. of Frank Flatch, Esq. ["Flatch Dep."] 60:19-24, annexed to Britton Cert., Ex. F.) Silvi asked Plaintiff to provide as much notice as possible about his son's FMLA-related appointments, including "an appointment card[,] a doctor's note, [or] some form of documentation to show when he [was] going to these appointments." (SUMF ¶ 49 (quoting Desmond Dep. 86:11-25).)

After Plaintiff received two written warnings for unexcused absences in April 2019, Flatch again advised Plaintiff that he was eligible for FMLA leave. (Defs.' App'x 104-110; *see also* SUMF ¶¶ 63-65.) Plaintiff gave Flatch the necessary Leave of Absence Request Forms, and a certification from his son's pediatrician.[5] (Pl.'s SMDF ¶ 19.) The certification form indicated Plaintiff required FMLA leave on an intermittent basis and was permitted to work a less than full schedule. (SUMF ¶ 67.) Shortly thereafter, Plaintiff began taking FMLA leave on an intermittent basis, using a total of seven days through the end of the year. (*Id.* ¶¶ 60, 134.)

This trend continued in 2021. From June 2021 until his termination in November 2021, Plaintiff used twenty days of FMLA leave. (*Id.* ¶ 83.) Plaintiff also exhausted his personal time for the year and accrued several unexcused absences. (*Id.* ¶ 87; *see also* Pl.'s Response to SUMF ¶ 87 (not admitting or denying these absences, but instead asserting this paragraph is "purely argumentative.").) Despite not having any personal time remaining, Plaintiff called out of work

---

[5] The pediatrician's certification form outlined that his son's diagnosis required "frequent visits to physicians and therapists, including occupational, physical therapy, and speech therapy. (Pl.'s SMDF, Ex. 9, ECF No. 47-2.)

several times between May through June, and again in July, which triggered a one-day suspension. (*Id.* ¶¶ 95, 97, 103, 105.)

### C. Events Preceding Plaintiff's Termination

On the evening of July 27, 2021, Plaintiff contacted his supervisor and Silvi's Plant Manager, Jeff Cowan ("Cowan"), and relayed that he needed to take an FMLA day the next day. (Pl.'s SMDF ¶ 73; SUMF ¶ 106.) Plaintiff texted Cowan that he was "in the hospital emergency room with [his] son who just broke two bones," and that he knew he had no personal time left but would be unable to work his scheduled shift. (SUMF ¶ 106; *see also* Defs.' App'x 470.) Cowan responded that he "received" the message and that he hoped Plaintiff's son "makes out okay." (*Id.*) Yet, when Plaintiff did not attend work the next day, he received a formal written notice stating: "[o]n July 28, 2021, you called out of work with no personal time available. This is a violation of Silvi's Attendance Policy." (Pl.'s SMDF ¶ 75.) This was Plaintiff's fifth unexcused absence for 2021 and resulted in a three-day suspension. (*Id.*; SUMF ¶¶ 107-08.)

A few days later, Plaintiff left work without any personal time available, constituting his sixth infraction of the year and resulting in a five-day suspension. (SUMF ¶ 109.) Following this violation, Silvi issued an "Employee Counseling/Discipline notice" to Plaintiff stating: "[p]lease receive this as a formal warning that any more unexcused absences prior to January 1st, 2022 will result in your termination of employment[.]" (*Id.* ¶ 110; Pl.'s SMDF ¶ 76.)[6] Plaintiff filed a

---

[6] Plaintiff disputes neither this unexcused absence nor Silvi's representation that "[u]nder the terms of its Attendance Policy, Silvi had the ability to terminate Plaintiff's employment at that time." (*Id.* ¶ 111; Pl.'s Response to Defs.' SUMF ¶ 111.)

grievance with the Union shortly thereafter stating that he "disagree[d] with [his] current write up" and five-day suspension. (SUMF ¶ 113.)

In November 2021, Plaintiff had his seventh unexcused absence, which violated the Attendance Policy and led directly to his termination. (*Id.* ¶ 80; Pl.'s SMDF ¶ 80.) Specifically, on November 10, 2021, Plaintiff was called in to work for a scheduled morning shift around 3:00 to 4:00 a.m. (Pl.'s SMDF ¶ 81; *see also* SUMF ¶ 123.) At 6:32 a.m., Plaintiff sent a text message to Cowan stating:

> Hey Jeff just an FYI I've been up for over 24[ hours] not being able to sleep due to my son having a meltdown last night. I am literally dangerously operating this truck as I've obviously been nodding out and trying to stay up by consuming energy drinks. With that being said I will be calling for a time after 8 [hours]. I cannot risk harming myself or putting someone else in harm[']s way for the sake of making the 10 [hour] quota. This is why I say my [FMLA] rights have been violated because I have intermittent [FMLA] and this situation should fall under that umbrella to prevent situations like this so when my child has episodes I have the right to stay home and attend to him without notice because these types of occurrences aren't foreseeable or predictable.

(SUMF ¶ 124.) Cowan responded that this request was "not for [him]" to handle, Plaintiff should refer it to Flatch, and Plaintiff should "go home please[]." (*Id.* ¶ 126.)

Desmond advised Flatch that Plaintiff's call out was "not what [his] current FMLA was certified for" and that the FMLA did not cover his request because "staying up with your kids when they wake up is what most parents have to do." (*Id.* ¶¶ 6, 129; *see also* Flatch Dep. 58:2-20.)

Defendants terminated Plaintiff five days later[7] on November 15, 2021. (*Id.* ¶ 130). Plaintiff lodged a grievance with the Union, claiming he was unfairly terminated and demanded

---

[7] Silvi did not draft a formal termination letter; rather, it sent Plaintiff an employee counseling/discipline form "because it was . . . a more efficient process." (SUMF 131.) Silvi's correspondence to the Union confirmed that Silvi terminated Plaintiff for "unexcused time off,"

compensation for all lost wages. (*Id.* ¶ 132.) Silvi stood firm, asserting that, because the November 10, 2021 absence was Plaintiff's seventh unexcused absence and violated the Attendance Policy, it was "well within its rights under the CBA and Work Rules to terminate [Plaintiff]." (SUMF ¶ 133.)

### D. Procedural History

Plaintiff initiated this federal action on February 25, 2022. (*See generally* Compl., ECF No. 1.) Plaintiff claims that his termination in November 2021 constituted unlawful interference and retaliation in violation of his FMLA rights. (*Id.* ¶¶ 50-51.) Count One of the Complaint alleges Silvi violated the ADA by engaging in associational disability discrimination, creating a hostile work environment, and retaliating against Plaintiff in connection with his son's disability. (*Id.* ¶¶ 38-43.) Count Two alleges FMLA interference and retaliation. (*Id.* ¶¶ 44-51.) Count Three alleges Silvi violated the NJLAD based on its alleged associational disability discrimination, hostile work environment,[8] and retaliation. (*Id.* ¶¶ 52-53.)

Silvi filed the instant motion for summary judgment on September 14, 2023. (Defs.' Moving Br., ECF No. 45-1.) Silvi moves for summary judgment on all counts in the Complaint.

---

and for violating his August 2021 final warning letter, which stated that any further instances of unexcused time off prior to January 1, 2022 would result in termination. (Pl.'s SMDF ¶ 96.)

[8] Although Plaintiff originally pled hostile work environment claims, he states in his opposition brief that he is "waiving said claims to narrow the issues before this Court." (Pl.'s Opp'n Br. 1, n.2, ECF No. 47.) The Court accordingly grants summary judgment for Silvi on Plaintiff's hostile work environment claims under the ADA and NJLAD.

(*See generally id.*) Alternatively, Silvi moves to compel arbitration based on the arbitration provision contained in the CBA. (*Id.* at 15-19.)

## II.   <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Counts One and Two allege violations of a federal statute. (Compl. ¶¶ 38-51.) The Court has supplemental jurisdiction over Plaintiff's state law claim that arises out of the same case or controversy, pursuant to 28 U.S.C. § 1367. (*Id.* ¶¶ 52-53.)

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a summary judgment motion, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at

247-48; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . 'there can be no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a summary judgment motion, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

IV.     **DISCUSSION**

A.      **Plaintiff's Claims Under the FMLA**

The Court turns first to Plaintiff's FMLA claims. The FMLA was enacted to provide leave for workers whose personal or medical circumstances require that they take time off from work in excess of what their employers are willing or able to provide. *Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101). The FMLA is intended "to balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption

of a child, and for the care of a child, spouse or parent who has a serious health condition." *Churchill v. Star Enters.*, 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

Under the FMLA, eligible employees of a covered employer may take up to twelve weeks of leave in a one-year period after certain events, including, as relevant here, a serious medical condition. 29 U.S.C. § 2612(a)(1)(C). When "medically necessary," leave must be granted on an intermittent or part-time basis. *Id.* at § 2612(b)(1). Intermittent leave is "leave taken in separate blocks of time due to a single qualifying reason," when medically necessary. 29 C.F.R. § 825.202(a). Federal regulations describe that intermittent leave "may include leave of periods from an hour or more to several weeks." *Id.* at § 825.202(b)(1). Intermittent leave includes leave taken for medical appointments or regular medical treatments. *Id.* Upon the employee's timely return, the employer must reinstate the employee to their former position or an equivalent. 29 U.S.C. § 2614(a)(1)(A).

An employer may be held liable for interfering with an employee's FMLA rights, and for retaliating against an employee who exercises their FMLA rights. *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 318 (3d Cir. 2014). Terminating an employee who makes a valid request for "FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). Plaintiff brings both FMLA retaliation and interference claims. While the two are related, the Court will address each claim separately as they are governed by distinct legal standards.

      i.      *Summary Judgment is Denied on Plaintiff's FMLA Retaliation Claim*

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The FMLA thus prohibits employers from discriminating against employees who

take FMLA leave and from using an employee's utilization of FMLA leave as a negative factor in employment actions, such as hiring, promotion, or disciplinary actions. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c). But where an employee is discharged during a protected leave for a reason unrelated to the leave, they have no right to reinstatement. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004) (citing 29 C.F.R. § 825.216(a)(1)).

To establish an FMLA retaliation claim, a plaintiff must first establish a prima facie case of retaliation by demonstrating that: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the plaintiff's FMLA leave. *Conoshenti*, 364 F.3d at 146.

After a plaintiff establishes a prima facie claim, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse action. *Moore v. City of Phil.*, 461 F.3d 331, 342 (3d Cir. 2006) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)). If a defendant successfully provides a legitimate, nondiscriminatory reason for the adverse action, the burden then shifts back to the plaintiff, who must show that the employer's proffered reason is only pretext and that the employer's real reason for the adverse action was to retaliate against the employee for taking FMLA leave. *Hodgens*, 144 F.3d at 161; *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 532 (D.N.J. 2008).

In moving for summary judgment, Silvi principally argues that Plaintiff has not come forward with sufficient evidence to meet his prima facie case under the first stage of the burden-shifting analysis. (Defs.' Moving Br. 13.) That is, Silvi contends that no reasonable factfinder could find a causal connection between Plaintiff's request for FMLA leave and the

ensuing employment action. (*Id.*) Silvi relies on two cases[9] to argue that Plaintiff's history of taking FMLA leave without any prior adverse employment action defeats a finding of a causal connection.

The Court finds that Plaintiff has made a sufficient showing of causation to support a prima facie FMLA retaliation claim. Defendants do not dispute the first two elements: that Plaintiff availed himself of a protected right under the FMLA and that he suffered an adverse employment action. (Defs.' Moving Br. 11-12.)

For causation, the Third Circuit has set forth two relevant factors in determining whether a causal link exists between the invocation of FMLA leave and the adverse employment decision: (1) a showing that the two events were close in time, or (2) evidence of ongoing antagonism toward the employee. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). Concerning the first category, "[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). In *Lichenstein v. University of Pittsburgh Medical Center*, for example, the Third Circuit determined that seven days between the protected activity and termination was unduly suggestive to create an inference of causality to defeat summary judgment. 691 F.3d 294, 307 (3d Cir. 2012) (citing cases).

The timeline in this case speaks for itself. Silvi terminated Plaintiff only five days after Plaintiff took what he contends is qualified FMLA leave. (SUMF ¶¶ 123-130.) This five-day period is "unusually suggestive" to suggest temporal proximity and is sufficient standing alone to

---

[9] *See Henson v. United States Foodservice*, No. 11-1809, 2013 WL 6080359, at *21 (D.N.J. Nov. 19, 2013), *aff'd*, 588 F. App'x 121, 125 (3d Cir. 2014), and *Banner v. Fletcher*, 834 F. App'x 766, 770 (3d Cir. 2020).

defeat summary judgment. *See Lichtenstein*, 691 F.3d at 307; *see also Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008) (four days); *Caruso v. Bally's Atl. City*, No. 16-05021, 2019 WL 4727912, at *16 (D.N.J. Sept. 27, 2019) (seven days); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (ten days).

Although Silvi argues that Plaintiff's frequent use of FMLA without incident undermines temporal proximity, courts in this District have rejected that argument, finding instead that the "frequent use of FMLA leave should not deprive a plaintiff of a path to making a prima facie case for causation." *Caruso*, 2019 WL 4727912, at *16. "Indeed, it may well be the repeated use of FMLA leave that prompts retaliation by some employers who may not retaliate against an individual use of FMLA leave." *Id.* at *17. As such, the close proximity between Silvi's disapproval of Plaintiff using his FMLA rights and his termination days later is unduly suggestive. The Court accordingly finds that Plaintiff has established a causal connection between the FMLA event and the adverse employment action. Hence, Plaintiff has established a prima facie case for FMLA retaliation.

Even if a prima facie claim is established, Silvi argues that it has a legitimate, non-retaliatory reason for terminating Plaintiff; namely, that Plaintiff violated the Attendance Policy. (Defs.' Moving Br. 13.) The Court generally agrees that, to the extent Plaintiff's absences on July 27, 2021 and November 10, 2021, were *not* protected under the FMLA, this may serve as a non-discriminatory reason for Plaintiff's termination. *See Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 122 (D.N.J. 2020) (citing *Smith v. Medpointe Healthcare, Inc.*, 338 F. App'x 230, 233-34 (3d Cir. 2009) (affirming summary judgment in favor of employer on a FMLA claim where plaintiff

took absences beyond those permitted by FMLA, and where those *non-protected absences* triggered the employer's stated absenteeism policy, compelling termination).

Thus, the burden shifts back to Plaintiff to provide sufficient evidence that Silvi's proffered reasons for termination were merely a pretext for FMLA retaliation. In showing a pretext, a plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably disbelieve the employer's articulated legitimate reason or believe that retaliatory animus was more likely than not a motivating or determinative cause of the employer's conduct. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998). Plaintiff need not demonstrate that his FMLA leave was the "sole or most important factor upon which the employer acted," only that it was a "negative factor in [the adverse] employment actions." *Lichtenstein*, 691 F.3d at 301 (quoting 29 C.F.R. § 825.220(c)). Here, a trier of fact could infer that Silvi improperly considered Plaintiff's July 27th and November 10th absences, which *may* have been FMLA qualifying events, as a negative factor in terminating Plaintiff. *Id.* at 311 (noting that, on the issue of pretext, "the question is not whether [defendant] discharged [plaintiff] for absenteeism and tardiness; the question is whether [plaintiff's] FMLA-qualifying leave . . . was a "negative factor" that hastened [the] termination). The Court finds, therefore, that Plaintiff has provided sufficient evidence to demonstrate pretext in that a reasonable factfinder could infer that Silvi would not have terminated Plaintiff absent him taking FMLA leave. *Id.* at 311-12 (citing *Kohls v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001)). Summary judgment is therefore denied on Plaintiff's FMLA retaliation claim.

*ii.    Summary Judgment is Denied on Plaintiff's FMLA Interference Claim*

By terminating Plaintiff's employment for invoking his right to FMLA leave, Plaintiff

contends that Silvi unlawfully interfered with his rights in violation of 29 U.S.C. § 2615(a).

(Compl. ¶¶ 44-51.) To prevail on his interference claim, a plaintiff must establish that:

> (1) he or she was an eligible employee under the FMLA; (2) the
> defendant was an employer subject to the FMLA's requirements;
> (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave
> notice to the defendant of his or her intention to take FMLA leave;
> and (5) the plaintiff was denied benefits to which he or she was
> entitled under the FMLA.

*Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017). To prove an interference claim,

"the employee need not show that he was treated differently than others[, and] the employer cannot

justify its actions by establishing a legitimate business purpose for its decision." *Sommer v.*

*Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (alteration in original) (internal quotation marks

omitted). Also, "[b]ecause the FMLA [interference claim] is not about discrimination, a

*McDonnell-Douglas* burden-shifting analysis is not required." *Id.*

Silvi's summary judgment motion only contests the fourth and fifth elements of an

interference claim, namely that: (1) Plaintiff did not provide sufficient notice to Silvi of his intent

to take FMLA leave (Defs.' Moving Br. 14-15); and (2) Plaintiff was "never denied leave" that he

was otherwise entitled to (*id.* at 14).

Turning first to notice, "[t]o invoke rights under the FMLA, employees must provide

adequate notice to their employer about their need to take [FMLA-qualifying] leave." *Lichtenstein*,

691 F.3d at 303; 29 C.F.R. § 825.302(c). An employee need not expressly assert the FMLA, or

even mention, the FMLA. *Id.* Where leave is unforeseeable, an employee must "provide sufficient

information for an employer to reasonably determine whether the FMLA *may* apply to the leave

request." *Id.* (emphasis added). The notice inquiry is not formulaic or stringent. *Id.* An employee

does not need to make a formal written request for anticipated leave; rather, a simple verbal notification can suffice. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007). Construing the FMLA's regulations, the Third Circuit has described that:

> [T]he "critical test" is not whether the employee gave every necessary detail to determine if the FMLA applies, but "how the information conveyed to the employer is reasonably interpreted." How the employee's notice is *reasonably interpreted is generally a question of fact, not law.* . . . Under the circumstances of this case, we believe that the adequacy of [plaintiff's] notice is a question of fact.

*Lichtenstein*, 691 F.3d at 303-04 (emphasis added) (internal citation omitted).

Here, Plaintiff claims that Silvi improperly terminated him after he accrued unexcused absences on July 27, 2021 and on November 10, 2021, his fifth and seventh offenses for 2021, respectively. (SUMF ¶¶ 107-08, 130.) The record clearly shows that Plaintiff gave Silvi *some* form of notice that he needed to take FMLA leave. On July 27th, for example, Plaintiff notified Cowan via a text message that he was in the emergency room with his son and that he would not "be able to make it in" for work the next day. (Pl.'s SMDF ¶ 73; *Id.* ¶ 106.) Cowan responded that the message was "received." (SUMF ¶ 106.) On November 10th, Plaintiff texted Cowan hours into his shift that he had been up for 24 hours caring for his son the night before, was exhausted, and was "dangerously operating" his truck. (*Id.* ¶ 124.) Plaintiff mentioned that he felt that his intermittent FMLA should cover "when [his] child has episodes [so that he can] . . . stay home and attend to him without notice because these occurrences aren't foreseeable or predictable." (*Id.*) Cowan replied that this was not within his purview and asked Plaintiff to address the matter with HR. (*Id.* ¶ 126.) Cowan also advised Plaintiff to go home for the day. (*Id.*)

In short, whether Plaintiff gave Silvi sufficient notice when he invoked FMLA-qualifying leave is a fact issue that warrants denying summary judgment. *See Washington v. Cooper*

*Hosp./Univ. Med. Ctr.*, No. 03-5791, 2005 WL 3299006, at *22 (D.N.J. Dec. 2, 2005) (noting that whether a plaintiff gave adequate notice under the FMLA "is a question of fact and credibility best suited for the jury."); *see also Hopson v. Quitman Co. Hosp. and Nursing Home, Inc.*, 126 F.3d 635, 640 (5th Cir. 1997) "[T]he adequacy of [the plaintiff's] notice is a fact issue. . . . Such determinations . . . are better left to the jury with its traditional function of assessing human behavior and expectations."). The record evidence, viewed in a light most favorable to Plaintiff, raises a question of fact as to whether Silvi had sufficient notice of Plaintiff's desire to take leave.

Moving to the fifth element of Plaintiff's interference claim, Silvi argues that it "never denied" Plaintiff leave and instead granted him numerous FMLA leaves during his tenure. Plaintiff received, for example, the twenty days of intermittent leave that he requested in 2021. (Defs.' Moving Br. 14.) "[T]o assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Callison v. City of Phil.*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)).

To prevail on his interference claim, Plaintiff must show that (1) he was entitled to take FMLA leave on July 27, 2021 and November 10, 2021; and (2) Silvi denied his right to do so. *See Lichtenstein*, 691 F.3d at 312 (citing *Callison*, 430 F.3d at 119). Importantly, a "termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA." *Barnett v. Revere Smelting & Refin. Corp.*, 67 F. Supp. 2d 378, 388 (S.D.N.Y. 1999); *see also Bertig v. Julia Ribaudo Healthcare Grp., LLC*, No. 15-2224, 2017 WL 4922012, at *4 (M.D. Pa. Oct. 31, 2017) ("The FMLA prevents the defendants from counting FMLA qualified absences against the plaintiff when tallying an employee's number of absences for termination purposes."); *Lichtenstein*, 691 F.3d at 307 ("Since [defendant's] position statement stated that [plaintiff's] attendance problems were one of the reasons it terminated [plaintiff], a

trier-of-fact could infer that [defendant] considered [plaintiff's] January 3rd absence as a negative factor in its termination decision.").

In other words, an employer's admission that it may have considered FMLA-qualifying absences as part of its termination decision, at minimum, creates a material fact dispute that precludes summary judgment for the employer. Here, given the clear factual disputes surrounding Plaintiff's invocation of his right to leave for his absences on July 27, 2021 and November 10, 2021, both of which resulted in discipline and termination under the Attendance Policy, the Court denies summary judgment on Plaintiff's FMLA interference claim.

**B.     Plaintiff's Disability Discrimination and Retaliation Claims Under the ADA/NJLAD**

The Court turns next to Silvi's motion for summary judgment on Plaintiff's disability discrimination claims. First, Silvi argues that summary judgment is appropriate on Plaintiff's ADA and NJLAD associational disability discrimination claim. (Defs.' Moving Br. 5-6.) Second, Silvi contends that Plaintiff's retaliation claims under ADA and NJLAD also fail because Plaintiff's persistent absenteeism—not discrimination—resulted in its disciplinary action toward Plaintiff. (*Id.* at 8-9.)

> *i.      Summary Judgment is Granted on Plaintiff's Associational Disability Discrimination Claim*

The ADA contains an "association provision" that prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

*Erdman*, 582 F.3d at 510 (citing 42 U.S.C. § 12112(b)(4)).[10] While the Third Circuit has not enunciated its own prima facie test for associational discrimination, it has persuasively cited the following standard:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; [and] (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 83 (3d Cir. 2019) (non-precedential).

Silvi moves for summary judgment only as to Plaintiff's ability of proving the fourth element of his prima facie case: that Silvi's termination decision was predicated on the belief that he would be obligated to miss work in order to care for his disabled son. (Defs.' Moving Br. 9-10.)

Courts have determined that, to satisfy the third and fourth elements of an associational discrimination claim, a plaintiff must demonstrate a "specific association with a disabled individual" and that the adverse employment decision was based on "unfounded stereotypes and assumptions arising from the employee's relationship[]" with that particular disabled person. *Tyson v. Access Servs.*, 158 F. Supp. 3d 309, 314 (E.D. Pa. 2016). Importantly, the Court must consider whether Plaintiff has produced sufficient evidence from which a reasonable jury could adduce that Silvi terminated Plaintiff "*because* of [his son's] disability." *Erdman*, 582 F.3d at 510 (emphasis in original). In other words, the ADA's association provision makes a "material

---

[10] Plaintiff recognizes that the NJLAD "does not expressly set forth a cause of action for discrimination based upon a plaintiff's association with a member of a protected class[.]" (Pl.'s Opp'n Br. 21 n.13.) Because the Court finds that Plaintiff cannot prevail on an associational discrimination claim under the ADA, the Court declines to analyze whether an associational discrimination claim exists under the NJLAD. Instead, because Plaintiff cannot sustain an ADA associational disability discrimination claim, his NJLAD associational discrimination claim under the NJLAD must fail too.

distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative." *Id.* As such, Plaintiff must show that Silvi terminated him based on his son's disability as opposed to his absenteeism and inability to attend work. *Id.*

The record presented here is devoid of evidence suggesting that Silvi's decision to terminate Plaintiff was motivated by his son's disability or "unfounded stereotypes." *Tyson*, 158 F. Supp. at 314. As Silvi points out, the company knew about Plaintiff's son's disability for at least three years before Plaintiff was fired. (SUMF ¶ 41.) Plaintiff's son was first diagnosed with autism in September 2017. (*Id.*) From September 2017 through 2021, Plaintiff was approved for and took various leaves without any evident adverse action from Silvi. *See Erdman*, 582 F.3d at 511 (denying ADA associational discrimination claim where the record established that the defendant "was aware of [plaintiff's daughter's] disability for many years before [plaintiff] was fired). In fact, after Plaintiff exhausted his personal time for the 2018 calendar year and after accruing several unexcused absences, Silvi encouraged Plaintiff to take FMLA leave to care for his son and provided him the appropriate paperwork. (Defs.' App'x 104-10; *see also* SUMF ¶¶ 66.) Silvi then gave Plaintiff FMLA leave on seven days for the remainder of 2019 (*id.* ¶ 60), and twenty days in 2021 (*id.* ¶ 83).[11]

Plaintiff contends that Silvi fired him based on his increased leave to care for his son—noting that in 2021, he took "significantly more time off to care for his son than he had in years prior." (Pl.'s Opp'n Br. 23.) This theory cannot sustain an associational disability discrimination

---

[11] Silvi also notes that during the onset of the COVID-19 pandemic, Plaintiff "exercised his right to leave under the Family First Coronavirus Response Act, on a block leave basis" for the 2020 calendar year. (SUMF ¶ 77.) Plaintiff appears to have taken this leave without incident.

claim. Here, as in *Erdman*, "[t]he most [Plaintiff] can hope to show is that [he] was fired for requesting time off to care for [his son] (the basis of his FMLA claim), not because of unfounded stereotypes or assumptions on [Silvi's] part about care required by disabled persons." 582 F.3d at 511. Thus, although Plaintiff may be able to sustain an FMLA claim that Silvi fired him for requesting time off to care for his son, he cannot sustain an ADA associational discrimination claim that Silvi fired him because of unfounded stereotypes or assumptions Silvi had about the care disabled persons require.[12] *Beird v. Lincoln Univ. of the Commonwealth Sys. of Higher Educ.*, 487 F. Supp. 3d 270, 282 (E.D. Pa. 2020) ("[I]f [d]efendant was singling [p]laintiff out for her time off, rather than for her or her family members' disabilities, the proper claim is one for FMLA retaliation, not associational disability discrimination.").

Accordingly, the Court grants summary judgment in favor of Silvi as to Plaintiff's associational discrimination claims.

### ii. Summary Judgment is Denied on Plaintiff's Retaliation Claims

Next, Silvi contends that the Court should grant summary judgment as to Plaintiff's retaliation claims under the ADA and NJLAD. (Defs.' Moving Br. 8-10.) The ADA and NJLAD make it unlawful for an employer to retaliate against or intimidate any individual because they oppose any act or practice made unlawful by the ADA or NJLAD. 42 U.S.C. § 12203; N.J.S.A. 10:5-12(d), (e); *Krouse*, 126 F.3d at 502 (citations and internal quotation marks omitted)

---

[12] More tellingly, the record supports that Silvi did not base any adverse action on stereotypes or assumptions, but rather, its conclusion that Plaintiff could not attend to his job duties. *See, e.g.*, *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 214 (4th Cir. 1994) (declining to find associational discrimination where an employee with a disabled son was terminated, not because of an unfounded assumption about the plaintiff's likelihood of missing work because of him, but because the plaintiff actually failed to meet the attendance requirements of the job and generated an extensive record of absences in connection with his care).

("[U]nlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a qualified individual with a disability.").

To survive a summary judgment motion on a retaliation claim, a plaintiff must demonstrate by a preponderance of the evidence that: (1) he engaged in a protected activity; (2) he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Id.* at 500. If an employee provides enough evidence to state a prima facie case of retaliation, the *McDonnell-Douglas* burden shifting framework, as stated above, applies. *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 94 (3d Cir. 2020) (providing that ADA retaliation claims are subject to the *McDonnell-Douglas* framework); *Holmes-Mergucz*, 2021 WL 3163985, at *4 (providing that the *McDonnell-Douglas* framework applies to NJLAD retaliation claims).

Silvi does not clearly identify which elements of Plaintiff's prima facie case it challenges; however, it appears on the face of the moving brief that Silvi targets only the first element—that Plaintiff was not engaged in a protected activity. (Defs.' Moving Br. 8-9.) In particular, Silvi argues that the absence leading to Plaintiff's termination on November 10, 2021 was not a qualifying FMLA event because Plaintiff left work due to being "tired" rather than because his son required his care. (Defs.' Moving Br. 9.) For many of the reasons stated above, the Court finds that, at this stage, Plaintiff has come forward with factual disputes as to whether the unexcused absence on November 10, 2021 was an FMLA-qualifying event. *Call v. Fresenius Med. Care Holdings, Inc.*, 534 F. Supp. 2d 184, 196 (D. Mass. 2008) ("[A] jury could believe that [p]laintiff was unprepared to go into work that evening after spending the entire day caring for her daughter."); *Brunelle v. Cyro Indus.*, 225 F. Supp. 2d 67, 77 n.13 (D. Me. 2002) (finding the FMLA was triggered where

a plaintiff might "technically [be available] to work" but was "not prepared to work" after spending an entire day providing care for his sick father).[13]

As the Court previously determined, Silvi presented a valid reason for terminating Plaintiff's employment: excessive and unexcused absenteeism. (Defs.' Moving Br. 9.) Turning the inquiry back to Plaintiff—as this Court must under the *McDonnell-Douglas* framework—the Court finds that Plaintiff has come forth with some evidence to sustain a claim of pretext for his retaliation claims. Here, Silvi's Statement of Undisputed Material Facts recounts numerous points where Flatch and other managers exercised discretion in counting some dates as "unexcused" or allowing other dates to go undisciplined to avoid terminating an employee. (SMDF ¶¶ 98-100.) Plaintiff, for example, violated the Attendance Policy eight times in 2015 and 2017, without getting terminated. (Defs.' App'x 10-21, 31-33, 34-47.) Plaintiff asserts that a material dispute exists about whether Defendants refused to exercise discretion or ignore Plaintiff's subsequent absences because they knew he had a sick child and increasingly needed FMLA leave. (Pl.'s Opp'n Br. 24.) A jury may very well consider whether an employee's increased use of leave, stemming from a child's increased need for care, led the company to terminate the employee.

This Court also considers that Defendants' moving brief devotes only two sentences on the issue of pretext. Defendants contend that Plaintiff has to prove that the reason for the termination of his employment was to retaliate against him for requesting intermittent leave and not his repeated violations of the Attendance Policy. (Defs.' Moving Br. 11.) Defendants then conclusively state that "no reasonable factfinder could reach this conclusion on this record." (*Id.*) While the Court does not foreclose that Plaintiff's chronic absenteeism may defeat pretext, the

---

[13] For the same reasons above, the Court finds causation that satisfies the third prong of Plaintiff's prima facie retaliation claim. (*See supra* pp. 13-14.) The Court need not repeat that analysis here.

Court does not find that Silvi, as the moving party, has shown "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Shahin v. Delaware*, 563 Fed. Appx. 196, 198 (Apr. 11, 2018) (citing Fed. R. Civ. P. 56(a)). If Silvi believes there is no genuine dispute of material fact here, it may refile a motion for summary judgment providing a more robust analysis and references to relevant authority on the issue of pretext. Accordingly, summary judgment is denied on Plaintiff's retaliation claims under the NJLAD and ADA.

### C.   Silvi's Motion to Compel Arbitration

Finally, Silvi argues in the alternative that the CBA's arbitration provision forecloses Plaintiff's claims. (CBA, Art. XVII.) Silvi notes that Plaintiff agreed to submit "any and all disputes or controversies arising under or in connection with the terms and provisions of [the CBA] or . . . anything . . . germane to the general subject matter of this agreement . . . for decision to an arbitrator . . . ." (*Id.*)

For one, it appears that Silvi waived its right to compel arbitration, given that both parties already expended significant resources in litigating this case. The Third Circuit has previously found against waiver in cases where the moving party waited between one and two months to assert its arbitration right, but has found waiver where a moving party waited more than ten months. *In re Pharm. Benefit Managers Antitrust Litig.*, 700 F.3d 109, 118 (3d Cir. 2012). At a minimum, Silvi should have included its arbitration claim as an alternative form of relief in a motion to dismiss or otherwise stated its intent to pursue arbitration earlier in this litigation. Doing so eighteen months into this litigation is untimely.

The merits of Silvi's motion to compel similarly fail. Courts in this District have determined that "an employee's claims . . . based on statutory rights . . . may only be subject to arbitration where the CBA contains a '*clear and unmistakable*' waiver of a judicial forum for such

rights." *Snyder*, 837 F. Supp. 2d at 440 (emphasis added) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 72 (1998)). In *Snyder*, the court interpreted an arbitration clause in a collective bargaining agreement that, like this case, broadly referred "all grievances, complaints, differences and disputes" to arbitration. *Id.* at 439. The court determined that the provision was not a "clear and unmistakable" waiver of a judicial forum because it did "not expressly specify that all disputes, including those arising independently of the [collective bargaining agreement], are subject to arbitration, nor [did] the [collective bargaining agreement] name or incorporate any federal or state statutes into the arbitration clause." *Id.* at 440. In other words, "[a] collective bargaining agreement containing only a general provision to submit all claims to arbitration *cannot preclude a lawsuit concerning an employee's individual statutory rights.*" *Id.* (emphasis added).

Here, like *Snyder*, the CBA's language does not name any specific state or federal statutes; it only includes a vague and general provision concerning "any and all disputes or controversies" arising under the CBA. (CBA, Art. XVII.) A CBA that has a general arbitration provision and a nondiscrimination provision but does not expressly mention the federal antidiscrimination statute under which the employee seeks redress does not constitute an explicit waiver of the employee's right to litigate statutory claims in a judicial forum. *Wright*, 525 U.S. at 80 ("We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'"). Because there has not been an explicit, clear, and unmistakable waiver of Plaintiff's statutorily protected rights under the FMLA, ADA, and NJLAD, the Court denies Silvi's alternative to compel arbitration on this basis.

IV.    **CONCLUSION**

For the reasons set forth above, Silvi's motion for summary judgment is granted in part and denied in part. An appropriate Order will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE